[Cite as *Gauthier v. Gauthier*, 2026-Ohio-3046.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| FORREST P. GAUTHIER, | : | APPEAL NOS. | C-250189 |
| | | | C-250190 |
| Plaintiff-Appellant, | : | | C-250617 |
| | | TRIAL NO. | A-1303244 |
| vs. | : | | |
| | | | |
| SU KANG GAUTHIER, | : | | |
| | | | *JUDGMENT ENTRY* |
| Defendant-Appellant, | : | | |
| | | | |
| and | : | | |
| | | | |
| ROBERT A. KLINGLER, | : | | |
| | | | |
| Defendant-Appellee. | : | | |

This cause was heard upon the appeals, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the cause is remanded in the appeals numbered C-250189 and C-250190. The appeal numbered C-250617 is dismissed.

Further, the court holds that there were reasonable grounds for these appeals, allows no penalty, and orders that costs be taxed 25 percent to Appellant Forrest Gauthier, 50 percent to Appellant Su Kang Gauthier, and 25 percent to Appellee Robert Klingler.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 8/7/2026.**

## OHIO FIRST DISTRICT COURT OF APPEALS

**Pursuant to App.R. 30, the clerk is directed to serve upon all parties, or their counsel if represented, a copy of the court's judgment and note such action on the docket.**

**By:**_____
            **Administrative Judge**

[Cite as *Gauthier v. Gauthier*, 2026-Ohio-3046.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| FORREST P. GAUTHIER, | : | APPEAL NOS. | C-250189 |
| | | | C-250190 |
| Plaintiff-Appellant, | : | | C-250617 |
| | | TRIAL NO. | A-1303244 |
| vs. | : | | |
| SU KANG GAUTHIER, | : | | |
| | | *O P I N I O N* | |
| Defendant-Appellant, | : | | |
| and | : | | |
| ROBERT A. KLINGLER, | : | | |
| Defendant-Appellee. | : | | |


Civil Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From are: Reversed and Cause Remanded in C-250189 and C-250190; Appeal Dismissed in C-250617

Date of Judgment Entry on Appeal: August 7, 2026


*Thomas E. Grossmann*, for Plaintiff-Appellant,

*Sams Fischer, LLC,* and *Robert S. Fischer*, for Defendant-Appellant,

*Robert A. Klingler Co., LPA,* and *Robert A. Klingler*, for Defendant-Appellee.

CROUSE, Judge.

{¶1} These appeals are the latest in the battle over attorney fees incurred by defendant-appellee Robert A. Klingler in his representation of defendant-appellant Su Kang Gauthier ("Su") in litigation against her former spouse, plaintiff-appellant Forrest P. Gauthier ("Forrest").

{¶2} In the appeal numbered C-250189, Forrest appeals from the trial court's March 5, 2025 judgment determining that an assignment of an attorney-fee award from Su to Klingler was valid and enforceable, and that a "notice of release and satisfaction of judgment" pertaining to the attorney-fee award was null and void. In the appeal numbered C-250190, Su appeals from this same judgment. And in the appeal numbered C-250617, Su appeals from the trial court's entry denying her Civ.R. 60(B) motion to vacate the court's March 5 judgment.

{¶3} For the reasons set forth below, we hold that the trial court had jurisdiction to rule on the validity of the assignment of the attorney-fee award from Su to Klingler. But because the trial court abused its discretion in denying Su's request for a continuance of the March 5 hearing that the court held to determine the validity of the assignment, we reverse the trial court's March 5 judgment and remand the cause for further proceedings.

## I. Factual and Procedural History

{¶4} This action originated in 2013 when Forrest filed a complaint against Su and Klingler. The underlying claims asserted in that complaint are not relevant to these appeals and were resolved in favor of Su and Klingler. After judgment was rendered in their favor, Su and Klingler moved for an award of attorney fees, alleging frivolous conduct under R.C. 2323.51 and that Su was entitled to an award of fees under an addendum agreement to a document the parties refer to as the "Full Text

Separation Agreement" ("FTSA"). Su and Forrest had executed the FTSA during their divorce proceedings, which took place in Warren County.

{¶5} In prior appeals, this court determined that fees were not warranted under R.C. 2323.51, but that the addendum agreement to the FTSA entitled Su to fees and costs incurred defending the claims brought by Forrest. *See Gauthier v. Gauthier*, 2018-Ohio-4970 (1st Dist.) ("*Gauthier I*"); *Gauthier v. Gauthier*, 2022-Ohio-541 (1st Dist.) ("*Gauthier II*"). In September 2022, the trial court issued an entry granting Su $93,583.34 in attorney fees and costs. In January 2024, this court affirmed that award in *Gauthier v. Gauthier*, 2024-Ohio-266 (1st Dist.) ("*Gauthier III*").

{¶6} On February 27, 2024, a certificate of judgment was issued against Forrest in the amount of $93,583.34.

{¶7} On April 8, 2024, Klingler filed an "Assignment of Judgment." This document stated,

> Judgment Creditor, Su Kang Gauthier ("Assignor") hereby assigns, transfers, and sets over unto Robert A. Klingler ("Assignee") all of her right, title, and interest in and to the following judgment entered in these proceedings in favor of Assignor and against Forrest Gauthier ("Judgment Debtor") as follows:
>
> > (a) Judgment Entry entered September 26, 2022 in the original amount of $93,583.34 plus interest accruing thereon at 3% per annum
> >
> > (b) Certificate of Judgement # CJ24005189

The document was undated and was signed by both Klingler and Su. Su's signature consisted of a Chinese character. At some point after this assignment was filed, the trial judge who had issued the award of fees recused from the case and a new trial

judge was assigned.

**{¶8}** On August 26, 2024, Klingler and Thomas Grossmann, counsel for Forrest throughout this action, appeared before the trial court for a hearing. Their respective clients did not attend. At that hearing, Klingler explained that the only action left to be taken in the case was to collect on the judgment for attorney fees. Klingler stated that he had filed a motion to compel discovery so that he could find assets to collect and satisfy the judgment. At no point during the hearing did Klingler state that Su had assigned the attorney-fee judgment to him. Grossmann told the court that Forrest had offered to settle the entire matter, but that Su had not responded to the offer. Grossmann represented that the settlement offer allowed Su to offset her attorney-fee judgment against an unrelated judgment that Forrest had obtained against her in the Warren County Domestic Relations Court ("WCDRC"). The trial court ordered Grossmann and Forrest to respond to discovery and agree to a date for Klingler to depose Forrest.

**{¶9}** On September 25, 2024, Forrest filed an affidavit stating, in relevant part, that he had obtained a judgment against Su in the amount of $224,476.94 in the WCDRC for patent costs, that a provision in the parties' FTSA provided that he did not have to pay any sums to Su as long as she owed him patent costs, and that under this provision of the FTSA, Forrest was not obligated to pay Su her attorney-fee judgment until she satisfied her patent-cost judgment. The affidavit additionally stated that Forrest and his counsel had drafted a settlement offer and gave it to Klingler to present to Su, but Klingler had refused to respond to the offer or acknowledge whether he gave it to Su.

**{¶10}** Forrest also filed a motion to disqualify Klingler as counsel for Su. The motion argued that Klingler's personal interests conflicted with Su's and that he had

failed to inform her about Forrest's settlement offer. The settlement offer allowed Su to use her attorney-fee judgment to satisfy the patent-cost judgment that Forrest had obtained against her. The trial court denied this motion.

**{¶11}** Su filed two affidavits in November 2024. The first affidavit simply stated that she had ended her engagement with Klingler and that he was not authorized to represent her any further in the action. The second affidavit was much more detailed. It stated in relevant part,

> I am 80 years old, born and raised in Korea, and English is my second language.
>
> For some time, I have wanted to settle this case. . . . My lawyer, Robert A. Klinger [sic], did not tell me about Forrest's [settlement] offer, but I believe it is good for me to accept.
>
> As I explain below, I believe that Mr. Klinger [sic] has not been acting for my interests or following my wishes in this case. I dismissed him as my lawyer by phone on October 24, 2024, and by affidavit on October 28, 2024.
>
> . . .
>
> Mr. Klinger [sic] claims I signed a new fee agreement with him on February 12, 2022. I have attached this agreement. I have no memory of Mr. Klinger [sic] discussing this with me or explaining what this agreement means. In the agreement Mr. Klinger [sic] says he will not charge me fees, but he did change [sic] me fees and has taken money from me.
>
> On November 6, 2024, Forrest sent me an "Assignment of Judgment" document, which was not dated. I attach this document

here. I had never seen it before Forrest sent it to me. I did not sign this, and I never agreed to this. Forrest also said he and his attorney had never seen it until now. I do not agree with this assignment and did not approve it.

**{¶12}** On November 13, 2024, the same day that this second affidavit was filed, Forrest and Su jointly filed a document captioned "Plaintiff's and defendants [sic] voluntary dismissal with prejudice." This notarized document was signed by both Su and Forrest. It stated, "Plaintiff Forrest P. Gauthier ('Forrest') and Defendant Su Kang Gauthier ('Su') have entered into a settlement agreement and herby [sic] dismiss this case and all proceedings, outstanding motions and discovery with prejudice."

**{¶13}** Klingler and Grossmann appeared at a hearing before the trial court on this same date. Again, neither Su nor Forrest appeared. Grossmann represented that Su and Forrest had reached a settlement agreement and had filed a notice of dismissal with prejudice. Grossmann further told the court that Su had discharged Klingler and was seeking other counsel, and that he had spoken to two attorneys who were considering representing Su. The trial court asked Klingler if he still represented Su, and Klingler responded, "Good question, Judge. I have never been informed by Ms. Gauthier that she doesn't want me to represent her." Klingler acknowledged that he had seen both of Su's affidavits.

**{¶14}** Klingler, for the first time, told the court about Su's assignment of her attorney-fee judgment to him. He stated, "I want to make Your Honor aware of an assignment of judgment that my client, Ms. Gauthier, signed. And it was filed of record in this case on April 8th of this year." He elaborated, "The judgment is mine now. It was always an attorney fee judgment. And although the judgment was in her name because of the way it worked, she assigned it to me. So I don't care if she dismisses the

8

case, if she settles or whatever. I've got a judgment in this court that I intend to pursue."

**{¶15}** The trial court ultimately continued the matter until December 11, 2024, and ordered that both Su and Forrest appear or face a penalty. This hearing was continued after Forrest and Grossmann filed an affidavit of disqualification of the trial court in the Ohio Supreme Court. The Supreme Court denied the affidavit of disqualification.

**{¶16}** Klingler filed a motion to strike the voluntary dismissal that Su and Forrest had filed. He argued that the dismissal was ineffective because he was a party to the action and had not signed it. Forrest opposed the motion to strike, arguing that Klingler was no longer a party to the action and that the judgment for fees belonged solely to Su. Forrest further argued that the assignment from Su to Klingler was not valid because it lacked consideration.

**{¶17}** On December 17, 2024, Klingler filed an affidavit in response to Su's November 13, 2024 affidavit. This affidavit was quite lengthy and addressed what Klingler believed to be falsehoods in Su's affidavit. It also set forth the manner in which the assignment of judgment was executed and Klingler's conveyance of Forrest's settlement offer to Su. On these points, the affidavit stated,

> I emailed a copy of the August 16th settlement proposal to Su Gauthier. On the same day, Su acknowledged that she had received and read the letter. She said she was in pain, and asked if I could explain it to her. . . .
>
> On August 28th, I emailed to Su Gauthier a letter I wrote summarizing the terms of Forrest Gauthier's settlement proposal, and also explaining that his proposal raised a conflict between my interest

9

and hers. I told her we needed to talk about the settlement proposal and the conflict of interest it raised . . . .

On the afternoon of August 30th, I met with Su Gauthier in her home. . . . We discussed in detail Forrest Gauthier's settlement proposal and all of its elements. I reminded her that Judge Hein had denied Forrest the judgment for Patent Costs he was seeking and that Forrest had appealed that decision. I explained to her that she may end up owing Forrest $225,476, or some portion of that amount, if he won his appeal in the 12th District Court of Appeals. I explained that Forrest in his letter was offering to credit her the amount of the Hamilton County attorney fee judgment against him—$93,583—toward the $225,476 he claimed she owes him, and was also offering to not attempt any further collection efforts on the remainder of any Warren County Patent Costs judgment, if she agreed to the terms of his proposal. Su's response was to shrug and say, in effect, "I don't have anything anyway, there is nothing for him to get."

. . .

I further explained to Su . . . that Forrest's settlement proposal raises a conflict of interest between her and me because he is offering to forego the collection of any Patent Fees he might be awarded if she will "halt the litigation in Hamilton County," which means stop the pursuit of collection of the attorney fee judgment. I explained that further pursuit of the collection of the attorney fee judgment will not inure to her financial benefit because the judgment is for attorney fees that she has never paid, and that I am entitled to receive those fees pursuant to

10

our fee agreement and the court's orders approving those fees. I explained that none of the judgment is intended to compensate her for any loss, except attorney fees, and because she did not pay any fees on this matter, she is not entitled to retain any portion of the judgment. I made it very clear that she personally has nothing to gain monetarily by my continuing to try to collect the attorney fee judgment from Forrest. Su Gauthier indicated that she understood this, and she said words to the effect of, "I want you to be paid, you did the work."

. . .

It is my opinion, based on my in-depth conversation with Su Gauthier and my 15 years of knowing her, that she fully understood the proposed settlement from Forrest Gauthier and the conflict of interest that it presented. After our discussion, Su Gauthier unequivocally rejected Forrest Gauthier's settlement proposal, and unequivocally stated that she wanted me to continue to represent her in all pending matters related to Forrest Gauthier.

After our discussion, and in my presence, Su signed a written waiver of conflict of interest, which had Forrest Gauthier's settlement proposal attached to it. I left a full and accurate copy of the waiver letter with Su Gauthier at that time.

. . .

It is my opinion that Su did not write or decide the content of any portion of her November 13, 2024 affidavit. I know from personal experience that she is not proficient enough in the English language to have written the affidavit. For this reason, and the fact that Forrest's

11

attorney Thomas Grossmann disavows having had anything to do with the Su Gauthier affidavits, it is my opinion that Forrest wrote them in their entirety.

. . .

I presented this Assignment of Judgment document to Su Gauthier in person, in the living room of her home, on April 7, 2024, the day before I filed it of record with the Hamilton County Clerk of Courts. . . . I gave her the document to read, and I explained that it transferred all her rights in the attorney fee judgment to me. I explained, as I had told her before, that she was not entitled to keep any of the attorney fee judgment that might be collected because it was for attorney fees I had earned working on this case. I explained that transferring the judgment to me would make it less complicated for me to pursue collecting the judgment for attorney fees because she would not have to be named as a party in any collection actions in other states or other lawsuits. I also explained that if Forrest succeeded in getting a lump-sum judgment against her for patent costs in the Warren County Case, he could try to argue that he owed no attorney fees because she owes him more than the attorney fee judgment . . . .

{¶18} The conflict-of-interest letter referenced in Klingler's affidavit did not tell Su that she had already assigned the attorney-fee judgment to him and that he, therefore, owned the judgment.

{¶19} Approximately two weeks after Klingler's affidavit was filed, Su filed a "notice of release and satisfaction of judgment." This document stated that Su acknowledged "full and complete satisfaction and release" of the attorney-fee award

issued in September 2022 and that the judgment was "satisfied and released through a settlement agreement with" Forrest. Klingler filed a motion to strike this notice.

{¶20} A hearing was scheduled for February 12, 2025. On February 11, 2025, the day before the hearing, Su moved for a continuance and to quash the subpoena for her attendance, stating that she needed time to retain counsel. Forrest also filed a motion to vacate the hearing date, to quash the subpoena of Su, and to dismiss all post-judgment proceedings. The court did not rule on the motions and so Klingler and Grossmann appeared for the hearing. Forrest and Su did not appear.

{¶21} On behalf of Forrest, Grossmann argued that the validity of the assignment from Su to Klingler had to be litigated in a declaratory-judgment action. Klingler, in turn, argued that the trial court needed to hold a hearing to determine the validity of the assignment and to address the allegedly false allegations in Su's affidavit, including that he had forged her signature on the assignment. Klingler stated that he considered his representation of Su to have ended as of November 13, when her affidavit was filed. He made an oral motion to withdraw from representation, which the trial court granted. The trial court unequivocally rejected Grossmann's argument that the validity of the assignment had to be determined in a declaratory-judgment action. It also denied Su's motion to quash her subpoena, continued the matter for a hearing on March 5, and again ordered Forrest and Su to appear.

{¶22} On March 3, Su filed a motion for a continuance stating that she needed additional time to obtain counsel. The record contains no ruling on that motion. On March 5, Klingler, Grossmann, Su, and Forrest all appeared for the scheduled hearing. The trial court began the hearing by questioning Su, without swearing her in, about a "letter" that she had sent to the court two days earlier. From the record, it is apparent that the trial court was questioning Su about her motion for a continuance, and we are

13

unsure why the trial court referred to the motion as a letter. Su initially insisted that she had written the document herself, but that she could not recall what it had said. She later admitted that Forrest had typed it.

**{¶23}** Upon additional questioning from the court, Su stated that she did not remember signing the assignment of judgment. She stated that she had not seen the assignment allegedly bearing her signature until Forrest showed it to her. The trial court looked at various examples of Su's signature (the Chinese character) on other documents, and it determined that she had signed the notice of assignment. Su was given no opportunity to offer additional information or discuss the other documents allegedly bearing her signature beyond answering the specific questions asked by the court.

**{¶24}** The trial court prohibited Grossmann and Forrest from making any argument or proffering any evidence at the hearing. The court stated that the purpose of the hearing was to determine whether Su signed the notice of assignment and whether Klingler could enforce the judgment against Forrest, and that Forrest "has no real dog in this fight." Grossmann argued that Forrest was affected by the judgment because Klingler intended to domesticate the judgment in Florida and take Forrest's property and because the judgment was used in the settlement reached by Forrest and Su. In multiple instances Grossmann attempted to make an argument, and the trial court prohibited him from doing so because, in the trial court's view, he was attempting to represent Su and make arguments on her behalf.

**{¶25}** Su reiterated at the hearing that she wanted an attorney, but that she could not tell the court when she wanted to return to court with that attorney. The trial court declined to continue the hearing for her to obtain counsel. It stated, "I am going to enter a judgment indicating that there is a valid assignment of the judgment, that

Mr. Klingler has a right to enforce said judgment against Mr. Gauthier in any way that he sees fit. Now, if you come back with an attorney, I'll reverse that, and we'll have an argument over it." Grossmann asked the court if he could "speak to this," and the trial court said he could not. Grossmann then asked to make a proffer to the bench, to which the trial court responded, "No. Denied." Grossmann asked when he could speak to the court reporter to make a proffer, and the trial court told him that he could not.

{¶26} The trial court subsequently issued an order finding that the assignment of judgment from Su to Klingler was valid and enforceable. It further declared that the notice of release and satisfaction Su had filed was null and void and that it was stricken from the record.

{¶27} Su and Forrest both appealed from the trial court's March 5 order. After Su filed her notice of appeal, new counsel filed a notice of appearance in the trial court on her behalf. While the appeals were pending, Su's counsel filed a "revocation of assignment" in the trial court on September 15, as well as a Civ.R. 60(B) motion to vacate the March 5 order. The motion was relatively bare-bones and stated that the trial court's earlier judgment should be vacated because Su had received no consideration for the assignment and had revoked it.

{¶28} This court issued a limited remand for the trial court to rule on Su's pending motion for relief from judgment. When the case was returned to the trial court, Klingler opposed Su's motion. The trial court issued an entry denying the motion to vacate, and Su appealed that judgment.

{¶29} Now pending before this court are Su's and Forrest's appeals from the trial court's March 5 judgment and Su's appeal from the trial court's entry denying her motion for relief from judgment. These three appeals present a myriad of assignments of error for our review.

### *II. Jurisdiction*

**{¶30}** In Su's second assignment of error, she argues that the trial court lacked jurisdiction to expunge her release and satisfaction of judgment and rule on the assignment. In Forrest's fourth assignment of error, he argues that the trial court lacked subject-matter jurisdiction to adjudicate the validity of the assignment.

**{¶31}** Su and Forrest challenge the trial court's jurisdiction to rule on the validity of the assignment on multiple grounds. "Whether a court has jurisdiction over a matter is a legal question we review de novo." *State ex rel. Maron v. Corrigan*, 2023-Ohio-2556, ¶ 9.

### *A. Civ.R. 41(A) Dismissal*

**{¶32}** Su and Forrest argue that their "voluntary dismissal with prejudice," made pursuant to Civ.R. 41(A), divested the trial court of jurisdiction.

**{¶33}** Civ.R. 41(A)(1)(b) provides that "a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by . . . [f]iling a stipulation of dismissal signed by all parties who have appeared in the action."

**{¶34}** Several key dates and facts are relevant to our analysis of this argument. The complaint in this action was filed by Forrest against Su *and* Klingler. Both were named defendants. On September 22, 2022, the trial court issued Su an award of attorney fees. At that point, judgment on all underlying claims had been resolved and the only live issue was that of attorney fees. After this court affirmed the trial court's award of attorney fees, Klingler filed an assignment of judgment on April 8, 2024. Various discovery-related motions were filed as Klingler attempted to collect on that judgment. Then, on November 13, 2024, Su and Forrest jointly filed the voluntary dismissal with prejudice.

**{¶35}** We first note that at the time that the notice of voluntary dismissal was

filed, there were no claims for Su and Forrest to dismiss. Judgment had already been rendered on the claims brought by Forrest. As stated, the only issue before the court was the attorney-fee judgment and whether it had been validly assigned to Klingler.

{¶36} We also note that the plain language of Civ.R. 41(A)(1)(b) states that a stipulation of dismissal must be "signed by all parties who have appeared in the action." Klingler was a named defendant and a party who appeared in the action. But even if Klingler's signature on the dismissal were not necessary, the trial court still retained jurisdiction to rule on the validity of the assignment.

{¶37} This is because, "despite a voluntary dismissal, a trial court may consider collateral issues not related to the merits of the action, e.g., sanctions under Fed.R.Civ.P. 11, R.C. 2323.51, and Civ.R. 45(E), and criminal contempt." *State ex rel. Fifth Third Mtge. Co. v. Russo*, 2011-Ohio-3177, ¶ 13; *see also Miles v. Cleveland Clinic Health Sys.-E. Region*, 2026-Ohio-190, ¶ 10 (8th Dist.) ("Collateral issues not related to the merits of the action include things such as sanctions, attorney fees, court costs and reasonable expenses." (Cleaned up.)).

{¶38} The attorney-fee judgment concerns a collateral issue that is not related to the merits of the action, so even if the dismissal in this case had been accepted, the trial court retained jurisdiction to consider the assignment of the attorney-fee judgment. *See Schwartz v. Gen. Accident Ins. of Am.*, 91 Ohio App.3d 603, 606 (1st Dist. 1993) ("[A] trial court does not lose jurisdiction to consider properly filed motions for sanctions pursuant to Civ.R. 11 and R.C. 2323.51 following the plaintiff's voluntary dismissal of the complaint under Civ.R. 41."); *Evans v. Quest Diagnostics, Inc.*, 2015-Ohio-3320, ¶ 9 (1st Dist.) ("A motion for Civ.R. 11 sanctions is a collateral matter and can be filed, heard, and ruled upon even after a final order has been issued in the underlying case.").

**{¶39}** We accordingly hold that the voluntary dismissal by Su and Forrest did not deprive the trial court of jurisdiction to rule on the validity of the assignment.

### B. Necessity of Filing a Declaratory-Judgment Action

**{¶40}** Su and Forrest further argue that the trial court lacked jurisdiction to rule on the validity of the assignment because the dispute over the assignment had to be litigated in a separate declaratory-judgment action pursuant to R.C. Ch. 2721.

**{¶41}** But neither Su nor Forrest have cited a single case that clearly holds that the validity of an assignment such as the one at issue must be challenged in a separate declaratory-judgment action.

**{¶42}** While Klingler *could have* filed a declaratory-judgment action pursuant to R.C. 2721.03 to have a court determine the validity of the assignment, he was not required to do so.

### C. WCDRC

**{¶43}** Su and Forrest additionally argue that the WCDRC retained exclusive subject-matter jurisdiction over this matter because the underlying judgment was issued pursuant to the addendum agreement, which was incorporated into the parties' FTSA and their divorce decree and entered as part of the record in Su and Forrest's divorce proceedings in Warren County. This argument lacks merit. Forrest himself filed claims under the addendum agreement in Hamilton County. And we held in *Gauthier I* that the trial court had jurisdiction to enforce the terms of the addendum agreement. *See Gauthier I*, 2018-Ohio-4970, at ¶ 34-36 (1st Dist.). The WCDRC did not have exclusive jurisdiction to rule on addendum-agreement-related claims and issues.

**{¶44}** We hold that the trial court had jurisdiction to rule on the validity of the assignment. Su's second assignment of error and Forrest's fourth assignment of error

are accordingly overruled.

### III.  *Denial of Motion for a Continuance*

**{¶45}**  In Su's first assignment of error, she argues that the trial court erred in denying her motion for a continuance and in compelling her to appear unrepresented.

**{¶46}**  A trial court's denial of a motion for a continuance is reviewed for an abuse of discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981); *State v. D.B.*, 2021-Ohio-426, ¶ 17 (1st Dist.). An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. It implies that the trial court's attitude is arbitrary, unreasonable, or unconscionable. *Gipson v. Mercy Health Sys. of S.W. Ohio*, 2025-Ohio-2208, ¶ 12 (1st Dist.). Under this deferential standard of review, an appellate court may not substitute its judgment for that of the trial court. *Id.*

**{¶47}**  In deciding whether to grant a continuance, a trial court must weigh potential prejudice to the litigant requesting the continuance against the "court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67; *D.B.* at ¶ 17. Relevant factors for the court to consider include (1) "the length of the delay requested," (2) whether other continuances have been granted, (3) the inconvenience a continuance would cause to the court and other parties to the proceedings, (4) "whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived," (5) whether the party requesting the continuance "contributed to the circumstance[s]" giving rise to its request, and (6) "other relevant factors." *Unger* at 67-68; *accord D.B.* at ¶ 17.

**{¶48}**  Su requested a 30-day continuance, which was a relatively short period of time. And the record does not reflect that she had received any prior continuances

19

on the dispute over the assignment. Su had, however, moved for a prior continuance one day before the February 12, 2025, hearing. The record contains no ruling from the trial court on the motion, but Su failed to show up for the hearing despite having been subpoenaed and not having been granted a continuance. Forrest also failed to appear at the February hearing.

**{¶49}** The continuance would undoubtedly have inconvenienced Klingler, but it was requested for a legitimate, nondilatory purpose—so that Su could obtain counsel. Recall that Klingler had served as counsel for Su in these proceedings since the action was initiated in 2013. A conflict of interest arose between Su and Klingler when Forrest offered to offset the patent-cost judgment he had obtained against Su with the attorney-fee judgment that she had allegedly assigned to Klingler. Su subsequently terminated Klingler's representation in October 2024, although Klingler did not formally withdraw from representing Su in the action until February 12, 2025.

**{¶50}** The effect of the trial court's denial was that Su was forced "to represent herself when she was demonstrably incapable of doing so." *Burton v. Burton*, 132 Ohio App.3d 473, 477 (3d Dist. 1999). The dispute over the validity of the assignment involved allegations that Klingler had forged Su's signature. The trial court questioned an unsworn Su, who was elderly and spoke limited English, about her signature on various documents. She was not subject to cross-examination. Su was noticeably confused throughout the questioning, and the documents that the trial court used to question Su were not admitted into evidence so that she could mount a challenge on appeal.

**{¶51}** Not only did the hearing before the trial court implicate issues of forgery, but it also involved a conflict of interest between Su and her former counsel, as well as allegations that Forrest had been manipulating Su and drafting documents

on her behalf. Further, as Su asserts, the stakes were high for her at this hearing. If the assignment was found to be invalid, Su would have been able to use the attorney-fee judgment to satisfy the entire patent-cost judgment that Forrest had obtained against her.

**{¶52}** Klingler argues that it was not unreasonable for the trial court to deny the continuance when Su had failed to obtain new counsel in the four months since she had terminated his representation. But we do not find four months to be an unreasonable time for Su to secure new counsel, particularly given the complexity of this case, the nuances implicated in it, and Su's inability to pay counsel. Again, we cannot ignore the fact that Klingler did not officially withdraw from Su's representation until February 12, 2025. Given the allegations in this case that Forrest had drafted documents on Su's behalf, we cannot say with any certainty that Su was aware she needed to look for new counsel when she filed an affidavit in November 2024 stating that she had had ended her engagement with Klingler.

**{¶53}** One of the more troubling aspects of the trial court's denial of Su's requested continuance is the fact that the court, after rendering judgment, told Su that "if you come back with an attorney, I'll reverse that, and we'll have an argument over it." We can discern no purpose for this statement. Was the court operating under a belief that Su did not actually intend to obtain new counsel and, in essence, calling her bluff? Or did the court believe that Su *was* entitled to have counsel to present arguments on her behalf? Regardless of the court's motivation, it did not, in fact, "reverse that," as Su requested when she returned with counsel. On April 9, 2025, Su's new counsel filed a notice of appearance and moved to reverse or stay the trial court's March 5 decision, referencing the trial court's statement that it would reverse its decision if Su returned with counsel. The trial court denied Su's motion.

**{¶54}** We accordingly hold that, on the unique facts and circumstances of this case, the trial court abused its discretion in denying Su's request for a continuance. Su's first assignment of error is sustained.

### *IV. Conclusion*

**{¶55}** The trial court's denial of Su's motion for a continuance requires us to reverse its judgment and remand the cause for further proceedings in the appeals numbered C-250189 and C-250190. Forrest's and Su's remaining assignments of error in the appeals numbered C-250189 and C-250190, as well as Su's assignments of error in the appeal numbered C-250617, are rendered moot by our resolution of Su's first assignment of error. The appeal numbered C-250617 is dismissed as moot.

Judgment accordingly.

KINSLEY, P.J., and BOCK, J., concur.